**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **FREEDOM PROPERTIES, L.P.,** | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **NO. 06-5469** |
| | : | |
| **LANSDALE WAREHOUSE** | : | |
| **CO. INC.,** | : | |
| **Defendant.** | : | |

**MEMORANDUM AND ORDER**

**Stengel, J.**                                                                                  **June 7, 2007**

This dispute arises from the anticipatory breach of a lease agreement for a property

located in Lansdale, Pennsylvania.  Defendants brought a motion to dismiss alleging that

the court lacks diversity jurisdiction over the dispute; we permitted the parties to conduct

discovery on this issue.  For the reasons described below, I will denying the motion.

**I.      BACKGROUND[1]**

Plaintiff, Freedom Properties, L.P., is a limited partnership that invests in and

owns real estate in Delaware and Pennsylvania.  Plaintiff consists of one general partner,

Freedom Properties, Inc., and two limited partners: Keith D. Stoltz and Jack Paul Stoltz.

Plaintiff is the owner of the property at 100 Kennett Avenue in the North Penn Business

Park in Lansdale, Pennsylvania that is at issue in this dispute.  On March 31, 2005,

plaintiff entered into a lease with defendant Lansdale Warehouse Co., Inc., a

---

[1] All facts are taken from the parties' pleadings.

Pennsylvania corporation.  On the same day, defendant W. Paul Delp, a citizen of Pennsylvania and a principal of Lansdale Warehouse Co., executed a guarantee for the lease.

Plaintiff does not manage the properties it owns.  Instead, through its general partner Freedom Properties, Inc., it engaged Stoltz Management to perform this function, including negotiating lease terms with prospective tenants.  Stephen Lewis, Vice President of Stolz Management, acted as plaintiff's agent throughout the lease negotiation.  Lewis signed the lease on March 31, 2005.[2]  The lease required rental payments and notices to be made to Freedom Properties, Inc. in care of Stolz Management.

On November 10, 2006, defendant Lansdale Warehouse Co. notified plaintiff that it intended to vacate the lease prematurely.  On December 14, 2006, plaintiff filed this lawsuit seeking recovery.  On January 17, 2007, defendants answered and counterclaimed for: (1) breach of the lease, (2) rescission, (3) fraud in the inducement, (4) negligent misrepresentation, and (5) tortious interference.[3]  Defendants have filed a related lawsuit

---

[2] The signature line of the lease lists "Keith Stolz, President of Freedom Properties, Inc., General Partner of Freedom Properties, L.P."  Compl. Ex. A, p. 51.  This is crossed out and replaced with "Stephen Lewis, Vice President, Stoltz Management of Delaware, Inc., its Agent."  Id.

[3] On February 12, 2007, plaintiff filed a motion to dismiss this counterclaim.  The court has postponed deciding the merits of this motion to dismiss until it determines whether it has subject matter jurisdiction over the dispute.  In its motion, plaintiff urges the court to dismiss defendants' counterclaim for fraud in the inducement and negligent misrepresentation for failure to state a claim upon which relief can be granted and to strike the remainder of the counterclaim under Rule 8 because it is "replete with excess verbiage, value judgements, vague terms, editorial comments, and frankly, language which would be more suitable to a dime store novel then in a Federal Complaint."  Mem. Defs' Mot. Dismiss Countercl. pp. 12-13.

in the Court of Common Pleas for Montgomery Country seeking rescission of the lease.

On February 12, 2007, defendants filed a motion to dismiss alleging that the court lacked subject matter jurisdiction.  On February 20, 2007, the court allowed discovery on the jurisdictional issues and permitted the parties to file supplementary briefs after the close of discovery.

## II.   STANDARD FOR MOTION TO DISMISS

### A.   Rule 12(b)(1)

A defendant can move to dismiss a claim over which a court lacks subject matter jurisdiction.  See FED. R. CIV. P. 12(b)(1) and 12 (h)(3).  The party asserting jurisdiction bears the burden of showing that the case is properly before the court.  Packard v. Provident Nat'l Bank, 994 F.2d 1039, 1045 (3d Cir. 1993).  In ruling on a 12(b)(1) motion, the court may consider affidavits and other evidence outside the pleadings. Federal Realty Inv. Trust v. Juniper Props. Group, No. 99-3389, 2000 U.S. Dist. LEXIS 344, at *8 (E.D. Pa. 2000) (citing Berardi v. Swanson Mem'l Lodge, 920 F.2d 198, 200 (3d Cir.1990).  The court "must accept as true the allegations contained in the plaintiff's complaint, except to the extent federal jurisdiction is dependent on certain facts."  Id. (citing Haydo v. Amerikohl Mining, Inc., 830 F.2d 494, 496 (3d Cir.1987)).

### B.   Rule 12(b)(7)

A defendant can also move to dismiss a complaint for failure to join an indispensable party.  FED. R. CIV. P. 12(b)(7).  Rule 19, which governs joinder of parties,

compels a bifurcated analysis.  See generally Koppers Co., Inc. v. The Aetna Cas. and Sur. Co., 158 F.3d 170, 175 (3d Cir. 1998).  The first step under subsection (a)[4] of Rule 19 is for the court to determine whether a party is "necessary" to the dispute and in the second step under subsection (b),[5] the court must evaluate whether a necessary party who cannot be joined is indispensable and therefore defeats diversity jurisdiction.  Id.

## III.   DISCUSSION

### A.      Subject Matter Jurisdiction

Freedom Properties asserts that the court has diversity subject matter jurisdiction under 28 U.S.C. § 1332(a) because this dispute is between citizens of different states and the amount in controversy exceeds $75,000.00, excluding interest and costs.  For diversity jurisdiction to attach, there must be complete diversity, or, in other words, all plaintiffs must have a different citizenship from all defendants.  Harper v. Fox, No. 06-1461, 2006 U.S. Dist. LEXIS 58225, at *4 (E.D. Pa. Aug. 18, 2006) (citing Menan Co. v.

---

[4] Subsection (a) states that "[a] person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest."

[5] Subsection (b) provides that "[i]f a person as described in subdivision (a)(1)-(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder."

Atl. Mut. Ins. Co., 147 F.3d 287, 290 (3d Cir. 1998)).  Both defendants, Lansdale Warehouse and W. Paul Delp, are citizens of Pennsylvania.  Compl. ¶¶ 4-5.  Therefore, to meet the complete diversity requirement, plaintiff Freedom Properties, L.P. cannot be a citizen of Pennsylvania.

A limited partnership, such as plaintiff, is a citizen of every state in which its general and limited partners are citizens.  Carden v. Arcoma Assoc., 494 U.S. 185, 195-96 (1990).  Freedom Properties, L.P. has two individual limited partners, Keith D. Stoltz[6] and Jack Paul Stolz, and one corporate general partner, Freedom Properties, Inc.  An individual's citizenship is determined by his domicile.  McCann v. Newman Irrevocable Tr., 458 F.3d 281 (3d Cir. 2006).  Keith Stolz resides in Wyoming and Jack Stolz lives in Florida.  Therefore, plaintiff is a citizen of Wyoming and Florida.

The parties' jurisdictional dispute focuses on the citizenship of plaintiff's general partner, Freedom Properties, Inc.  According to 28 U.S.C. §1332(c)(1), "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business."  Freedom Properties, Inc. is incorporated in Delaware.  The parties, however, disagree about its principal place of business.  Defendants argue that Pennsylvania is its principal place of business, which would make plaintiff a citizen of Pennsylvania and destroy diversity, while plaintiff argues that Delaware is its principal place of business.

---

[6] Keith Stolz is also the president of the general partner, Freedom Properties, Inc.  Stolz Dep. p. 21.

While a corporation may be a citizen of two states, it can only have one principal place of business.  Bruesewitz v. Wyeth, Inc., No. 05-5994, 2006 U.S. Dist. LEXIS 13206 (E.D. Pa. Mar. 27, 2006); Campbell v. Assoc., 223 F. Supp. 151, 154 (E.D. Pa. 1963).  To determine the principal place of business, courts in the Third Circuit apply a center of corporate activities test.  Midlantic Nat. Bank v. Hansen, 48 F.3d 693,696 (3d Cir. 1995); Kelly v. United States Steel Corp., 284 F.2d 850, 854 (3d Cir. 1960).  In Bruesewitz, Judge Baylson summarized the center of corporate activities analysis as follow:

> Under this test, the Kelly court requires courts to ascertain the headquarters of the day-to-day corporate activity and management.  To make this determination, a court looks not where final decisions are made on corporate policy, but rather where the corporation conducts its affairs.  In Kelly, the Third Circuit looked to the location and composition of the defendant corporation's Operation Policy Committee, which was responsible for conducting the corporation's business in manufacturing, mining, transportation and general operation, along with policy decision-making and various appointment powers, the location of its Vice Presidents, General Solicitor and the employees to determine the corporation's principal place of business.  Relevant factors of lesser importance include: (1) location of physical plants; (2) location of assets; and (3) location of employees. The Kelly court also considered several other factors upon which it did not place great weight.  For example, the place of the meeting of the shareholders alone cannot be the principal place of business of a corporation. Although, the situs of the board of director's meetings and financing decisions may be a factor in determining a corporation's principal place of business, this alone will ordinarily not suffice.  Bruesewitz, 2006 U.S. Dist. LEXIS 13206, at *5-6 (internal citations omitted).

Plaintiff asserts that Delaware is Freedom Property, Inc.'s principal place of business under this test because it only has one corporate office located at 3828 Kennett Pike in Greenville, Delaware.  Affidavit of Keith Stoltz ¶.  All of Freedom Property, Inc.'s corporate records are maintained in Delaware, along with its board meetings and minutes.

-6-

Deposition of Keith Stoltz p. 10.  Freedom Property, Inc.'s tax returns are prepared and filed in Delaware and the returns list Greenville, Delaware as its place of business.  Id. at 32, Resp. Mot. Dismiss. Ex. B, 2005 U.S. Income Tax Return for Freedom Properties, Inc.

Defendants argue that 725 Conshocken State Road in Bala Cynwyd, Pennsylvania is Freedom Properties, Inc.'s principal place of business.  Freedom Properties, Inc.'s 2005 Delaware Annual Franchise Tax Report lists all of its officers at the 725 Conshohocken State Road address in Pennsylvania.  Defs' Mot. Dismiss Ex. B.  This is the address of Stolz Management.[7]  Keith Stolz, the President of Freedom Properties, Inc., has testified that Freedom Properties, Inc. does not conduct business at this address in Pennsylvania. Stolz explained that it is a common industry practice for owners to hire management and leasing companies to find tenants and perform day to day maintenance activities.  Stolz Dep. pp. 12-13.  However, the general partner, Freedom Properties, Inc., directs the leasing company, Stolz Management.  Stolz testified that "[t]he management of the management and the leasing company, all decisions relating to who we're leasing property to or what rent, whether something is acceptable, not acceptable, whether we're spending, you know, a million dollars a year for a capital budget because we want to do a

_____

[7] While plaintiff does acknowledge that the complaint confusingly reads that plaintiff is a Delaware limited partnership with a place of business at 725 Conshohocken State Road in Bala Cynwyd, Pennsylvania, see Compl. ¶ 1, plaintiff's counsel mistakenly omitted that the address in Bala Cynwyd was "care of" Stolz Management.  Compl. Ex. A. p. 3.  A court does not have to credit pleading errors that run contrary to the facts because a court has the power to make an independent determination concerning subject matter jurisdiction.  See ASCO Healthcare, Inc. v. County of Chester, No. 99-2329, 2000 U.S. Dist. LEXIS 17651, at *51 n.8 (E.D. Pa. Nov. 21, 2000).  Plaintiff has also requested permission to amend the complaint.

renovation or not, is done by the general partner, Freedom Properties, Inc." Id. p. 13. Stolz also testified that it would have been typical for a management company to receive rent and other deposits and deposit them in the owner's account; to negotiate the lease; to execute the lease; and to manage the lease including tenant interactions and tenant problems.  Stolz Dep. pp. 27-28.  Freedom Properties, Inc., as the general partner, would have reviewed a summary of the lease terms and approved of the lease before it permitted the management company to execute the lease.  Id. p. 29.  Freedom Properties, Inc. makes all decisions concerning the retention of the companies it hires to manage its real estate. Stolz. Aff. ¶ 7.

    Stolz's testimony supports the assertion that Delaware, and not Pennsylvania, is Freedom Properties, Inc.'s place of business under the center of corporate activities test because all decisions regarding Freedom Properties, Inc.'s real estate investments are made from Delaware and Freedom Properties, Inc. retains the ability to fire Stolz Management.  While Freedom Properties, L.P. does own property in Pennsylvania, its corporate meetings are held in Delaware and it files federal taxes from Delaware.  All of these factors weigh in favor of finding that Delaware is Freedom Properties, Inc.'s principal place of business.  Since plaintiff is a citizen of Delaware, there is complete diversity and the court has subject matter jurisdiction.

**B.    Joinder of Stoltz Management**

**(1)    Necessary Party**

Under Rule 19(a), "a party is necessary if either (1) the present parties will be denied complete relief in the absence of the party to be joined, or (2) the absent party will suffer some loss or be put at risk of suffering such a loss if not joined.  As Rule 19(a) is stated in the disjunctive, if either subsection is satisfied, the absent party is a necessary party that should be joined if possible.  Koppers Co., 158 F.3d at 175.  There are no allegations that Stolz Management will suffer a loss if it is not joined in this litigation; instead, the parties dispute whether defendants will be denied complete relief without the joinder of Stolz Management.

Plaintiff argues that Stolz Management is not a necessary party because the case focuses on plaintiff and defendants' rights and obligations under the lease.  Stoltz Management is not a party to the lease or the guarantee, and does not have an ownership interest in the Lansdale property.  Plaintiff concedes that Stoltz Management may possess relevant evidence since it executed the lease and managed the property on a day-to-day basis but suggests that defendants can access this information by calling Stoltz Management as a witness during discovery or at trial.

Defendants counter that courts have found agents to be necessary parties under

Rule 19.[8]  Moreover, as defendants have counterclaimed for fraud in the inducement and negligent misrepresentation, they urge the court to find Stoltz Management is a necessary party because Stoltz alone will be able to address whether it made representations during lease negotiations, or at the execution of the lease, or after signing the contract.

General agency theory and Pennsylvania law[9] counsels that an agent who discloses that he is working for a principal is not a party to a contract and therefore, the principal alone is liable for any breach.   See Perlman v. Pittsburgh Cabinets & Builders Supplies, Inc., 156 A.2d 373, 375 (Pa. Super. Ct. 1959); Merit Motors, Inc. v. Bartholomew, 118 A.2d 277, 279 (Pa. Super. Ct. 1955) ("It is well established that a person acting as an agent for a disclosed principal is not, in the absence of special circumstances, a party to the contract....In the absence of any evidence of fraud, lack of authority to bind the principal or other exceptional matter, the general rule must be enforced.") (internal citations omitted).  Moreover, the "principal is liable to third parties for the frauds, deceits, concealments, misrepresentations, torts, negligences and other malfeasances and

---

[8] In support of their position, defendants cite a single Third Circuit case affirming a district court's dismissal under Rule 19 for failure to join a particular insurance carrier that brokered the plaintiff's insurance policy. Guthrie Clinic, Ltd. v. Travelers Indemnity Co., 104 Fed. Appx. 218, 221 (3d Cir. 2004).  In that case, plaintiff learned through discovery that defendant was a parent holding company for the specific company, Aon Risk Services, Inc., that brokered plaintiff's insurance policy.  Id. at 220.  The Third Circuit affirmed the district court's finding that the brokerage firm was necessary because it was the corporate entity responsible for procuring the policy at issue.  Id. at 222.  This situation is distinguishable because Stoltz Management acted as plaintiff's agent in the transaction.

[9] According to the lease, the court is required to apply Pennsylvania law because the property is located in Pennsylvania.  Section 22.15 of the lease entitled "Applicable Law" states that "[t]his Lease and the rights and obligations of the parties hereunder shall be construed in accordance with the laws of the State in which the Property is Located." Compl. Ex. A. pp. 48-49

misfeasances of his agent committed within the scope of his employment even though the principal did not authorize, justify, participate in or know of such conduct or even if he forbade the acts or disapproved of them, as long as they occurred within the agent's scope of employment." Aiello v. Ed Saxe Real Estate, Inc., 499 A.2d 282, 285 (Pa. 1985).

Plaintiff freely admits that Stolz Management acted as its agent and Stoltz Management, in turn, disclosed this relationship to defendants. Stoltz Management negotiated and executed the lease within the scope of its employment as plaintiff's agent. Therefore, plaintiff is estopped from arguing that it is not liable for its agent's conduct during the lease negotiations. Plaintiff, as the principal, is potentially liable for defendant's counterclaims and therefore the joinder of Stoltz Management is not necessary.

### (2)    Indispensable Party

If the court concludes that the defendant is not necessary, it cannot find that it is indispensable under the terms of Rule 19(b). However, a consideration of the four factors governing the indispensable party analysis shows that joinder is not necessary. According to Rule 19(b), the court must consider: "first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have

an adequate remedy if the action is dismissed for nonjoinder." FED. R. CIV. P. 19(b).

First, in analyzing whether Stoltz Management is a necessary party, the court has already determined that defendants will not be prejudiced by the failure to join Stoltz because since Stoltz Management acted as plaintiff's agent, plaintiff is solely liable. Second, defendants argue that they will be prejudiced by the non-joinder because only Stoltz Management is able to speak to plaintiff's relationship with defendants; however, nothing prevents defendants from deposing the individuals they dealt with through Stoltz. The third factor is also disposed of by the court's finding that Stoltz is not necessary. Finally, even though plaintiff has an available alternative in state court, both parties can also litigate all their claims in this federal court.  Therefore, Stoltz Management is neither a necessary nor an indispensable party.

## IV.    CONCLUSION

For the reasons stated above, I will denying defendants' motion to dismiss and exercise diversity subject matter jurisdiction over the dispute.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **FREEDOM PROPERTIES, L.P.,** | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **NO. 06-5469** |
| | : | |
| **LANSDALE WAREHOUSE** | : | |
| **CO. INC.,** | : | |
| **Defendant.** | : | |

## O R D E R

**AND NOW**, this 7th day of June, 2007, upon consideration of Defendant's Motion to Dismiss (Document No. 6) and the responses thereto, it is hereby **ORDERED** that the motion is **DENIED**.  It is further **ORDERED** that defendants are to respond to plaintiff's motion to dismiss its counterclaim within fourteen (14) days of this order.

BY THE COURT:


 /s/ Lawrence F. Stengel
LAWRENCE F. STENGEL, J.