IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **FREEDOM PROPERTIES, L.P.,** | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | NO. 06-5469 |
| | : | |
| **LANSDALE WAREHOUSE** | : | |
| **CO. INC.,** | : | |
| Defendant. | : | |

<u>MEMORANDUM AND ORDER</u>

**Stengel, J.**                                                                                                           **August 2, 2007**

This dispute arises from the anticipatory breach of a lease agreement.  Plaintiff filed a motion to dismiss counts three and four of defendants' counterclaim, alleging that the parol evidence rule, the gist of the action doctrine, and the economic loss doctrine bar defendants' actions for negligent misrepresentation and fraudulent inducement and a motion to strike the entire counterclaim.  For the reasons described below, I will grant plaintiff's motion to dismiss and deny the motion to strike.

**I.     BACKGROUND[1]**

Freedom Properties, L.P. entered into a written lease agreement with Lansdale Warehouse, Co., Inc. and W. Paul Delp, defendants, for rental of property at the North Penn Business Park.  Freedom Properties is the property owner and landlord in this dispute.  Lansdale, the tenant, stores inventory for clients in rental space.

---

[1] All fact are taken from the parties' pleadings.

-1-

Freedom Properties sent Lansdale a Lease Proposal for "prime space" in December 2004, which proposed that the property would be ready for occupancy in "Spring 2005." Countercl. ¶ 41. Freedom Properties later made a representation that the property would be available on May 1, 2005. Id. ¶ 42. However, the Lease Agreement, which was signed on March 31, 2005, indicated: "Landlord will use its best efforts to tender possession of the Demised Premises on or before June 15, 2005." Id. at ¶ 48.

The Lease Agreement also stated that the 125,000 square foot "premises" to be rented by Lansdale was "Tenant's portion of Landlord's Building as shown on Schedule 'A-1' or 'A-2'." Id. at ¶ 45. The Lease Agreement also indicated that the space designated A-1 was "temporary space" and the space designated A-2 was the "prime space." Id. An addendum to Schedule A-1 of the lease provides that "Landlord agrees to prepare the Schedule 'A-2' space for occupancy as set forth in the Lease no later than March 31, 2006." Id. at ¶ 52.

The June 15, 2005 commencement date of the Lease Agreement was intended to coincide with the expiration of Lansdale's lease for another property and to give it time to relocate its clients' inventory. Id. at ¶ 49. Yet, Freedom Properties did not permit Lansdale to move inventory into space at North Penn Business Park until August 22, 2005, at which point, Lansdale space moved into the "Schedule A-1" temporary space. Id. at ¶ 53. As a result of not being able to occupy either the temporary or prime space on June 15, the date stated in the lease, Lansdale became a holdover tenant at the premises

that it had planned on vacating, and was forced to pay rent there at an increased rate. Id. at ¶ 56.

Lansdale further alleges that the temporary space was inadequate in comparison to the promised prime space and lacked amenities including heating and air conditioning, reconditioned restrooms and floors, a working sprinkler system, and turnkey office fit-up. Id. at ¶ 57. As a result of these inadequacies, Lansdale was issued a cease and desist order from the Township Zoning Board, had to remove some of the inventory contained in the building, and eventually lost the business of two clients whose inventory could not remain in the space. Id. at ¶¶ 66, 68.

At the time of filing this counterclaim, Freedom Properties has still not delivered the prime space for occupancy. In an email communication dated May 19, 2006, Freedom Properties informed Lansdale that the prime space would not be available until March of 2007. Id. at ¶ 84. Freedom Properties filed a complaint on December 14, 2006 seeking recovery after Lansdale notified it that it intended to terminate the lease prematurely. Lansdale answered and counterclaimed for (1) breach of the lease, (2) rescission, (3) fraud in the inducement, (4) negligent misrepresentation, and (5) tortious interference. On February 12, 2007, defendants filed a motion to dismiss for lack of jurisdiction, which the court denied on June 7, 2007. Plaintiff has filed a Rule 12(b)(6) motion to dismiss the third and fourth counts of the counterclaim for fraud in the inducement and negligent misrepresentation and has also filed a motion pursuant to Rule

12(f) to strike the entire counterclaim. Defendants responded in opposition on June 22, 2007 and plaintiff filed a reply brief on June 26, 2007.

## II.     STANDARD FOR A MOTION TO DISMISS

### A.     Rule 12(f)

According to Rule 12(f), upon motion by a party or on its own initiative, "the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f). Motions to strike are generally viewed with disfavor, and are only granted when justice requires. See Am. Standard Life & Accident Ins. Co. v. U.R.L., Inc., 701 F. Supp. 527, 531 (M.D. Pa. 1988). "A motion to strike should only be granted when it can be shown that the matter to be stricken 'is unworthy of consideration.'" Torso v. Ohio Nat'l Life Ins. Co., No. 03:2007-65, 2007 U.S. Dist. LEXIS 46997, at *5 (citing Burke v. Mesta Mach. Co., 5 F.R.D. 134, 138 (W.D. Pa. 1946).

### B.     Rule 12(b)(6)

Courts use the same standard in ruling on a motion to dismiss a counterclaim under Federal Rule of Civil Procedure 12(b)(6) as they do for a complaint. United States v. Union Gas Co., 743 F. Supp. 1144, 1150 (E.D. Pa. 1990). The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of a complaint. Sturn v. Clark, 835 F.2d 1009, 1011 (3d Cir. 1987). The court may grant a motion to dismiss only where "it appears beyond a reasonable doubt that the plaintiff can prove no set of facts in

support of his claim that would entitle him to relief." Carino v. Stefan, 376 F.3d 156, 159 (3d Cir. 2004) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).  In deciding a motion to dismiss, the court must construe the complaint liberally, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff.  Id., see also D.P. Enters. V. Bucks County Cmty. Coll., 725 F.2d 943, 944 (3d Cir. 1984).  A plaintiff, however, must plead specific factual allegations.  Neither "bald assertions" nor "vague and conclusory allegations" are accepted as true.  See Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997); Sterling v. Southeastern Pa. Transp. Auth., 897 F. Supp. 893 (E.D. Pa. 1995).

Substantive state law governs this dispute since this court has diversity jurisdiction.  See Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938).  To ascertain Pennsylvania law, this court must look to the decisions of the Pennsylvania Supreme Court and other lower state courts.  Royal Indem. Co. v. Sec. Guards, Inc. 255 F. Supp. 2d 497, 501 (E.D. Pa. 2003).  Courts can resolve contract disputes on a motion to dismiss "if the claims under which the plaintiff seeks relief are barred by the unambiguous terms of a contract attached to the pleading, because the interpretation of an unambiguous contract is a matter of law for the court."  Jaskey Finance & Leasing v. Display Data Corp., 564 F. Supp. 160, 163 (E.D. Pa. 1983).

## III. DISCUSSION

### A.  Motion to Strike Counterclaim

Plaintiff contends that defendants' entire counterclaim should be stricken, or defendants should be required to replead since the counterclaim does not comport with Rule 8 of the Federal Rules of Civil Procedure.[1]  Specifically, plaintiff asserts that the claim is "replete with excess verbiage, value judgments, vague terms, editorial comments, and frankly, language which would be more suitable in a dime store novel then [sic] in a Federal Complaint."  Mot. Dismiss, p. 13.

Plaintiff cites no case law in support of its position, but does include in its motion an impressive chart spanning two pages which contains numerous examples of what it considers to be "impertinent and immaterial statements" in defendants' counterclaim.  See Mem. Pl's Mot. Dismiss pp. 5- 6.[2]  However, the use of what is essentially colorful and dramatic language in a twenty-two page counterclaim does not qualify as "immaterial,

---

[2] Rule 8 requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P 8(a)(2).  "Each averment of a pleading shall be simple, concise, and direct. No technical forms of pleading or motions are required."  Id. at (e)(1).

[3] Examples of the objectionable phrases plaintiff moved to strike are "inferior and woefully inadequate," "worse yet," "drastically impaired," "apparently content to simply allow the Enforcement Notice to lapse," and "with total disregard for."  Plaintiff cites a treatise for the proposition that "[u]nnecessary prolixity in a pleading places an unjustified burden on the district judge and the party who must respond to it because they are forced to ferret out the relevant material from a mass of verbiage."  5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure, § 1281 (2007).  However, this section goes on to state that "[a]s one court has remarked, 'the law does not require nor does justice demand that a judge must grope through two thousand pages of irrational prolix and redundant pleadings, containing matters foreign to the issue involved in a proceeding for a writ of habeas corpus, in order to determine the grounds for the petitioner's complaint.'"  Id.  The complete statement distinguishes this case from the example, and does not compel granting the motion to strike.

impertinent, or scandalous matter" under Rule 12(f). Therefore, I will deny plaintiff's 12(f) motion to strike defendants' complaint.

### B. Motion to Dismiss Counterclaim

#### (1) Parol Evidence Rule

Freedom Properties argues that the parol evidence rule bars the introduction of evidence pertaining to any pre-contractual representations it made concerning the availability and quality of the leased space. These representations are the subject of defendants' claims for fraudulent inducement and negligent representation.

The parol evidence rule bars prior or contemporaneous oral representations or agreements about a subject that is specifically dealt with in a written contract where the contract covers the entire agreement of the parties, absent fraud, accident, or mistake. 1726 Cherry St. P'ship v. Bell Atlantic Props., 653 A.2d 663, 666 (Pa. Super. Ct. 1995) appeal denied 664 A.2d 976 (Pa. 1995) (citing Bardwell v. Willis Co., 100 A.2d 102, 104 (Pa. 1953)). In Pennsylvania, parol evidence is allowed to show fraud-in-the-execution, but not fraud-in-the-inducement. Id at 147. Fraud-in-the-execution claims are recognized when representations concerning a subject covered in the integrated written agreement are "made prior to or contemporaneous with the execution of the agreement to modify or avoid the terms of that agreement *only where it is alleged that the parties agreed that those representations would be included in the written agreement but were omitted by fraud, accident, or mistake.*" Retail Brand Alliance, Inc. v. Rockvale Outlet Center, LP,

2007 U.S. Dist. LEXIS 7318, No. 06-01857 at *15-16 (E.D. Pa. 2007) (quoting <u>1726 Cherry St. P'ship</u>, 653 A.2d at 666) (emphasis in the original).  Fraud-in-the-inducement occurs "where the party proffering evidence of additional prior representations does not contend that the parties agreed that the additional representations would be in the written agreement, but rather claims that the representations were fraudulently made and that but for them, he or she never would have entered into the agreement."  <u>Id</u>.

In its counterclaim, defendants aver that plaintiff fraudulently induced it to sign the Lease Agreement by repeatedly making false representations about the quality and availability of the leased space.  Specifically, defendants point to the representations made in the Lease Proposal that the prime space would be ready in the Spring of 2005, other representations that the prime space would be ready on March 31, 2005 or May 1, 2005, and the statement in the Lease Agreement that plaintiff would use its best efforts to have either the temporary or prime space ready by June 15, 2005.  Countercl. ¶ 115.

The representations concerning the readiness of the space by Spring 2005, March 31, 2005 or May 1, 2005 are clearly barred by the parol evidence rule.  The Lease Agreement provides a date of availability and contains an integration clause.[1]  There is no

---

[4] Section 22.11 of the Lease Agreement contains a no-modification clause which provides: "as a final expression of their agreement and as a complete and exclusive statement of the terms thereof, and all negotiations, considerations, and representations between the parties have been incorporated therein.  No course of prior dealings between the parties or their officers, employees, agents, or affiliates shall be relevant or admissible to supplement, explain, or vary any of the terms of this Agreement…no representations, understandings or agreements have been made or relied upon in the making of this Lease other than those specifically set forth herein."  Mot. Dismiss, p. 9.

indication in defendants' pleading that the dates prior to June 15, 2005 were to be part of the agreement, or that they were fraudulently, mistakenly, or accidentally left out of it.

Defendants argue that these prior representations are consistent with the terms of the agreement, and thus outside the ambit of the parol evidence rule. Resp. Mot. Dismiss p. 12. They cite Academy Plaza LLC v. Bryant Asset Management, where information concerning square footage, lease expiration dates, rental amounts, and rent increases, among other things, contained in brochures about a rental property, was not barred by the parol evidence rule. No. 2744, 2006 Phila. Ct. Com. Pl. LEXIS 238, at *34 (Phila. Cty. Ct. Com. Pl. July 9, 2006) (finding that the action in fraudulent inducement was maintainable because the terms in the brochure did not vary, modify, or supercede the terms of the agreement that was eventually signed). Defendants claim that since plaintiff made the same representations prior to the signing of the lease as it did in the lease itself, this case is analogous to Academy Plaza and the parol evidence rule does not bar evidence of these representations. Defendants argue that the term "Spring 2005" is "reiterated" in the lease by the term "June 15, 2005." Resp. Mot. Dismiss, p. 14. The idea defendants put forth, that the ambiguous term "Spring" does not vary or modify the unambiguous date of June 15 in the Lease Agreement, is nonsensical. The only dates that give rise to contractual duties in this case are June 15, 2005 and March 31, 2006, the dates contained in the Lease Agreement. These dates are contract terms and not inducements to enter into the contract. Representations made that the commencement date of the Lease

Agreement would be May 1, 2005 or Spring, 2005 are barred by the parol evidence rule. Therefore, defendants cannot maintain the claims for fraudulent inducement and negligent misrepresentation by relying on these representations.

### (2)   Gist of the Action Doctrine

There remains the question of whether defendants still have a claim for fraudulent inducement or negligent misrepresentation based on plaintiff's promise to have the temporary or prime space available by the dates contained in the Lease Agreement. Plaintiff argues that defendants are attempting to turn a simple breach of contract claim into two additional tort claims and that this is prohibited by the gist of the action doctrine.

The gist of the action doctrine precludes a plaintiff from recasting an ordinary contract claim as a tort claim. See McCloskey v. Novastar Mortgage, Inc., No. 05-1162, 2007 U.S. Dist. LEXIS 6538, at *23 (E.D. Pa, Jan. 29, 2007) (citing eToll, Inc. v. Elias/Savion Adver., Inc., 811 A.2d 10, 14 (Pa. Super. Ct. 2002).[1] The doctrine bars tort claims "(1) arising solely from a contract between the parties; (2) where the duties allegedly breached were created and grounded in the contract itself; (3) where the liability stems from a contract; or (4) where the tort claim essentially duplicates a breach of contract claim or the success of which is wholly dependent on the terms of a contract." Reed v. Dupuis, 920 A.2d 861, 864 (Pa. Super. Ct., 2007) (internal citations omitted).

---

[5] he Pennsylvania Supreme Court has not expressly adopted the gist of the action doctrine, but the Pennsylvania Superior Court and several United States District Courts have predicted that it will. See, e.g., Retail Brand Alliance, 2007 U.S. Dist. LEXIS 7318, at *27, n. 8 (E.D. Pa. 2007); eToll, Inc v. Elias/Savion Adver., Inc. 811 A.2d 10, 14 (Pa. Super. Ct. 2002).

"The doctrine requires that the court examine the claim to determine whether the 'gist' or gravamen of it sounds in contract or tort." Retail Brand Alliance, 2007 U.S. Dist. LEXIS 7318, at *27 (citing Sunquest Info. Sys. v. Dean Witter Reynolds, 40 F. Supp. 2d 644, 651 (W.D. Pa. 1999). Where a tort action lies "from the breach of duties imposed as a matter of social policy," a contract action lies "for the breach of duties imposed by mutual consensus." Bash v. Bell Tel. Co., 601 A.2d 825, 829 (Pa. Super. Ct. 1992). A breach of contract can give rise to an actionable tort only if the wrong ascribed to the defendant is collateral to the contract. eToll, Inc. v. Elias/Savion Adver., Inc. 811 A.2d 10, 14 (Pa. Super. Ct. 1996). (internal quotations omitted).

Statements made prior to the execution of a contract are not barred by the gist of the action doctrine. See McCloskey, 2007 U.S. Dist. LEXIS 6538 at *27 (stating "[f]raudulent inducement to enter into a contract has been held to be collateral to a contract"). However, in this case, representations of the commencement date made prior to execution of the Lease Agreement (May 1, 2005 and Spring, 2005) that conflict with the date contained therein (June 15, 2005) are barred by the parol evidence rule. To the extent that the promise of a June 15, 2005 commencement date was a misrepresentation prior to the formation of the contract, that date was a contract term, and as per McCloskey, "a misrepresentation in the performance of the contract…merely restates the breach of contract claim." Id.

Defendants contend that "the gist of the action doctrine does not bar claims based on fraudulent misrepresentations where the plaintiff alleges that said misrepresentations were designed to induce the plaintiff to enter a contract." Resp. Mot. Dismiss, p. 17; see Sullivan v. Chartwell Investment Partners, LP 873 A.2d 710, 719 (Pa. Super. Ct. 2005). Defendants rely on Sullivan, a tort case where the defendant employer promised a severance package and other compensation to induce the plaintiff employee to perform services beyond his contractual obligation. See id. at 717. The plaintiff's contract required him to work until he found a new job yet his employer induced him to work past the time he had found the new job with false promises it never intended to perform. Id. The court in Sullivan observed that the plaintiff's fraud-in-the-inducement claims were not barred by the gist of the action doctrine because inducements to enter into the contract "[did] not relate to Appellee's failure to perform its obligations under the contracts." Id. at 719. This case is distinguishable because the fraud alleged by defendants is based solely on plaintiff's failure to perform its contractual obligation to have the leased premises available for occupancy by June 15, 2005.

Moreover, promises made to induce a party to enter into a contract that eventually become part of the contract itself cannot be the basis for a fraud-in-the inducement claim under the gist of the action doctrine. See Owen J. Roberts Sch. Dist. v. HTE, Inc., No. 02-7830, 2003 U.S. Dist. LEXIS 2997, at *14 (E.D. Pa. Feb. 28, 2003) (finding that the gist of the action doctrine barred a fraudulent inducement claim because "negotiation

stage statements…eventually resulted in specific contractual duties"); see also Tier1 Innovation, LLC v. Expert Tech. Group, LP, No. 06-04622, 2007 U.S. Dist. LEXIS 34135, at *12 (E.D. Pa. May 8, 2007) (dismissing counterclaims for fraud and negligent misrepresentation because statements concerning plaintiff's ability to perform its duties under the contract were "inextricably intertwined" with plaintiff's failure to perform under the contract.) Since all the promises plaintiff made to induce defendants to enter into this contract, with the exception of those barred by the parol evidence rule, are contained in the Lease Agreement, the gist of the action doctrine prevents defendants from making a claim of fraud based on plaintiff's failure to fulfill these promises.

The gist of the action in this case is clearly based in contract. Defendants' claims for fraudulent inducement and negligent misrepresentation are based on plaintiff's failure to perform its contractual duty to have the premises ready for occupancy by the date contained in the Lease Agreement. Therefore, I will grant plaintiff's motion to dismiss based on the gist of the action doctrine.

### (3) Economic Loss Doctrine

#### a. Negligent Misrepresentation

Plaintiff also alleges alternatively that defendants' counterclaims are barred by the economic loss doctrine. This doctrine is similarly meant to keep the spheres of tort and contract law separate and dictates that in breach of contract cases where negligence is alleged, the parties' recovery for economic losses is limited to an action on the contract.

New York State Elec. & Gas Corp. v. Westinghouse Elec. Corp., 564 A.2d. 919, 925 (Pa. Super. Ct. 1989) (finding that, because the parties had entered into fully integrated contractual agreements, "they must now be held to those agreements and cannot avoid them under theories of negligence or strict liability" by suing for damages beyond those available for breach of contract). The doctrine reflects the desire of Pennsylvania courts to avoid imposing a duty of good faith on contracting parties that is not tied to a contractual term. See Duquesne Light Co. v. Westinghouse Elec. Corp., 66 F.3d 604, 618 (3d Cir. 1995).

Defendants argue that the economic loss doctrine does not apply to negligent misrepresentation claims, suggesting that it only bars recovery in tort when the defendant does not know that the plaintiff will be influenced or guided by contractual representations. See David Pflumm Paving & Excavating Inc. v. Foundation Services Co., 816 A.2d 1164, 1168 (Pa. Super. Ct. 2003). Since plaintiff knew defendant and could foresee the harm, defendants argue that the economic loss doctrine cannot be invoked. In Pennsylvania, the economic loss doctrine is not a bar when two parties have a special relationship such that a negligent party can foresee harm to the plaintiff. Beecham v. American Life and Casualty Insurance ,65 Pa. D&C 4th, 370, 382 (Lackawanna Cty. Ct. Com. Pl. Dec. 9, 2003). However, a business relationship between two parties to a commercial contract dealing at arms length is not a "special relationship" under

Pennsylvania law.  See Valley Forge Convention & Visitors Bureau v. Visitor's Serv., 28 F. Supp. 2d 947, 953 (E.D. Pa, 1998) (stating "[t]here is a crucial distinction between surrendering control of one's affairs to a fiduciary or confidant or party in a position to exercise undue influence and entering an arms length commercial agreement, however important its performance may be to the success of one's business").

The relationship between the parties in this case is a contractual one between two commercial entities dealing at arms length.  Therefore, the economic loss doctrine bars the bringing of an action in tort for a breach of contract and there is no exception based on any special relationship between the parties.  Since the contractual relationship limits defendants to bringing a cause of action for breach of contract, I will grant plaintiff's motion to dismiss the negligent misrepresentation claim.

### b.    Fraudulent Inducement

Defendants also argue that claims of fraudulent inducement are not barred by the economic loss doctrine.  However, as is reflected in the gist-of-the-action doctrine, Pennsylvania courts are reluctant to recognize tort liability for purely economic loss.  In contract actions, the economic loss doctrine prohibits claims of intentional fraud when economic losses are incurred from breach of contractual obligations.  Werwinski v. Ford Motor Co., 286 F.3d 661, 680 (3d. Cir. 2002).

Defendants analogize this case to a sale of goods case, Professional Systems Corp. v. Opex Postal Technologies, where the court denied a defendant's motion to dismiss fraud

-15-

in the inducement claims on the basis of the economic loss doctrine. See No. 05-2689, 2006 U.S. Dist. LEXIS 9487, at *15 (E.D. Pa Mar. 8, 2006) (finding that since the allegedly fraudulent representations made prior to sale were not concerned with the quality of the products sold, but rather with the potential return on plaintiff's investment in purchasing them, the economic loss doctrine was not a bar to the fraud in the inducement claim). However, the court in Professional Systems made clear that a proper reading of Werwinski reveals that the only time the economic loss doctrine does not apply to fraud in the inducement claims is when "the fraud is extraneous to the contract and not interwoven with the breach of the contract." Id at *14-15 (citing Air Prods. & Chems., Inc. v. Eaton Metal Prods. Co., 256 F. Supp. 2d 329, 337 (E.D. Pa. 2003).

Defendants' assertion then, that "fraudulent inducement claims do not implicate the economic loss rule" is misguided. Resp. Mot. Dismiss, p. 22. Since its allegations of fraudulent inducement are interwoven with the breach of contract, the claim is based solely on a failure to perform in accordance with express contractual terms. Therefore, the claim for fraudulent inducement will also be denied on the basis of the economic loss doctrine.

## IV. CONCLUSION

For the reasons stated above, I will grant plaintiff's motion to dismiss counts three and four of defendants' counterclaim and deny plaintiff's motion to strike the counterclaim. An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **FREEDOM PROPERTIES, L.P.,** | : | **CIVIL ACTION** |
| Plaintiff, | : | |
| | : | |
| v. | : | NO. 06-5469 |
| | : | |
| **LANSDALE WAREHOUSE CO. INC.,** | : | |
| | : | |
| Defendant. | : | |

**O R D E R**

**AND NOW**, this 2nd day of August, 2007, upon consideration of Plaintiff's Motion to Dismiss (Document No. 7) and the responses thereto, it is hereby **ORDERED** that the motion is **GRANTED in part**. Counts III and IV of the counterclaim are dismissed with prejudice. Plaintiffs' motion to strike is **DENIED**.

BY THE COURT:

/s/ Lawrence F. Stengel
LAWRENCE F. STENGEL, J.