## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **FREEDOM PROPERTIES, L.P.,** | : | **CIVIL ACTION** |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | **NO. 06-5469** |
| | : | |
| **LANSDALE WAREHOUSE CO, INC.:** | | |
| **and W. PAUL DELP,** | : | |
| **Defendants** | : | |

## M E M O R A N D U M

**STENGEL, J.**                                          **October 30, 2008**

This case arises from a landlord's claim of anticipatory breach of a lease

agreement.  Freedom Properties, L.P., the landlord, brought this suit for damages against

Lansdale Warehouse Co., Inc., the tenant, who gave notice to rescind and terminate a

commercial lease for warehouse space.  Lansdale filed a counterclaim for breach of the

lease, rescission, fraud, misrepresentation and tortious interference.  Freedom Properties

has filed a motion for partial summary judgment in the amount of $3,592,262.55, which

represents the rent for the remainder of the lease along with costs and interest.  Lansdale

has filed a cross-motion for partial summary judgment, requesting the return of its

$55,000 security deposit, plus interest.

## I.      BACKGROUND

Freedom Properties entered into a written lease agreement with Lansdale and W.

Paul Delp, defendants, for rental of property at the North Penn Business Park, in

Lansdale, Pennsylvania.  Freedom Properties is the property owner and landlord.

Lansdale, the tenant, stores inventory for clients in rental space.

Freedom Properties sent Lansdale a Lease Proposal for "prime space" in December 2004, which proposed that the property would be ready for occupancy in "Spring 2005."  Freedom Properties later said that the property would be available on May 1, 2005.  The Lease Agreement, which was signed on March 31, 2005, indicated: "Landlord will use its best efforts to tender possession of the Demised Premises on or before June 15, 2005."

The Lease Agreement also stated that the 125,000 square foot "premises" to be rented by Lansdale was "Tenant's portion of Landlord's Building as shown on Schedule 'A-1' or 'A-2'."  The Lease Agreement also indicated that the space designated A-1 was "temporary space" and the space designated A-2 was the "prime space."  An addendum to Schedule A-1 of the lease provides that "Landlord agrees to prepare the Schedule 'A-2' space for occupancy as set forth in the Lease no later than March 31, 2006."

The June 15, 2005 commencement date of the lease was intended to coincide with the expiration of Lansdale's lease for another property.  Yet, Freedom Properties did not permit Lansdale to move inventory into the space at North Penn Business Park until August 22, 2005 when Lansdale finally moved into the "Schedule A-1" temporary space. As a result of not being able to occupy either the temporary or prime space on June 15, the date stated in the lease, Lansdale became a "holdover tenant" at the premises it had planned on vacating, and was forced to pay rent there at an increased rate.

-2-

Lansdale contends that the temporary space was inadequate in comparison to the promised prime space and lacked amenities including heating and air conditioning, reconditioned restrooms and floors, a working sprinkler system, and turnkey office fit-up. As a result of these inadequacies, Lansdale was issued a cease and desist order from the Township Zoning Board, had to remove some of the inventory contained in the building, and eventually lost the business of two clients whose inventory it could not store in the space.

Lansdale also lost Draeger Medical as a warehousing customer. Draeger Medical was warehousing in the temporary space and voiced interest in moving to additional space within the premises. Lansdale could not work out a cost-effective deal with Freedom Properties to lease the additional space to store Draeger Medical's goods. Shortly thereafter, UTi, a warehousing market competitor, learned of Draeger Medical's interest and worked out a deal with Freedom Properties to rent the additional space to Dreager Medical. This resulted in Draeger Medical terminating their contract with Lansdale.

Lansdale notified Freedom Properties of its intent to rescind and terminate the lease and demanded a refund of their security deposit on November 10, 2006. In response, Freedom Properties filed a complaint on December 14, 2006 for anticipatory breach of contract, breach of contract and enforcement of guarantee. Lansdale answered and counterclaimed for (1) breach of the lease, (2) rescission, (3) fraud in the inducement, (4) negligent misrepresentation, and (5) tortious interference. On February 12, 2007,

defendants filed a motion to dismiss for lack of jurisdiction, which the court denied on June 7, 2007.  Plaintiff filed a Rule 12(b)(6) motion to dismiss the third and fourth counts of the counterclaim for fraud in the inducement and negligent misrepresentation and a motion pursuant to Rule 12(f) to strike the entire counterclaim on February 12, 2007.  The court granted plaintiff's 12(b)(6) motion to dismiss the third and fourth counts of the counterclaim, but denied plaintiff's motion to strike.  Both parties then filed motions for partial summary judgment.

## II.    STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).  An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A factual dispute is "material" if it might affect the outcome of the case under governing law.  Id.

A party seeking summary judgment always bears the initial responsibility for informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  Where the non-moving party bears the burden of proof on a particular issue at trial, the movant's initial Celotex burden can be met simply

by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case." Id. at 325.  After the moving party has met its initial burden, "the adverse party's response, by affidavits or otherwise as provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). That is, summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. at 322.

Under Rule 56, the court must view the evidence presented on the motion in the light most favorable to the opposing party.  Anderson v. Liberty Lobby, Inc., 477 U.S. at 255.  The court must decide not whether the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented.  Id. at 252.  If the non-moving party has exceeded the mere scintilla of evidence threshold and has offered a genuine issue of material fact, then the court cannot credit the movant's version of events against the opponent, even if the quantity of the movant's evidence far outweighs that of its opponent.  Big Apple BMW, Inc. v. BMW of North America, Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

## III.   DISCUSSION

### A.  Plaintiff's Motion for Partial Summary Judgment

Freedom Properties requests partial summary judgment in the amount of

$3,592,262.55 claiming that there is no genuine issue of material fact to be determined in its complaint and counterclaim.  Their argument has six parts: (1) the lease precludes the defendants from proceeding with its counterclaim; (2) Lansdale cannot establish evidence of a breach or of any damages flowing from a breach; (3) W. Paul Delp is liable under the guarantee; (4) the defendants have not met their burden concerning the exercise of best efforts; (5) there is no evidence of interference with Draeger Medical; and (6) rent should be accelerated in accordance with the Lease.

### 1.   The Counterclaim

Freedom Properties asserts that the lease precludes Lansdale from proceeding with their counterclaim.  The lease states that if possession of the property cannot be obtained for any reason, "no obligation of Tenant shall be affected thereby and Landlord shall not be liable to Tenant for any loss or damage on account thereof."  Freedom Properties argues that Lansdale is still liable under the lease to pay rent, despite their failure to deliver the premises by the promised date.  However, this reasoning would require that even if Freedom Properties never delivered the primary space, Lansdale would be liable to pay rent.

In Fox's Foods, Inc. v. Kmart Corp., the lease stated that the landlord would use best efforts to substantially complete the leased space on or before June 15, 1992, but in any event would have the leased space substantially completed no later than June 15, 1993.  870 F. Supp. 599, 602 (M.D. Pa. 1994).  The court found that interpreting the lease

to limit the landlord's liability for delay in possession of the property would serve to effectively eliminate any intent the parties had in setting deadlines and that if the obligation to use best efforts was to have any effect, the breach of that duty must be actionable under the lease.  Id. at 606.  Lansdale places the portion of the lease excerpted by Freedom Properties back in its context and shows that the lease also states that "[n]o failure to deliver possession and/or occupancy on the Commencement Date shall extend the Term of this Lease."   The lease also explicitly gives the landlord leave to terminate the lease without liability if the property cannot be delivered.  Lansdale argues that no language in the lease precludes the tenant from having the same right.

Freedom Properties further asserts that the counterclaim is improper because Lansdale declared in a Tenant Certificate to the Citizens Bank of Pennsylvania that they had no claim, defense or counterclaim against Freedom Properties, excepting only that it is in temporary space.  Lansdale first points out that Freedom Properties threatened them with suit if they did not sign the Certificate.  Next, Lansdale argues that the language of the Certificate still specifically reserves the right to a counterclaim.  The Tenant Certificate states, "[a]ll of the conditions precedent have not been satisfied subject to the requirements as set forth in the lease and no rights of termination remain in effect, except as follows: The Tenant is currently occupying temporary space."  The Certificate goes on to state, "No condition exists which with the giving of notice or the passage of time, or both, would constitute a default under the Lease except as subject to the requirements as

set forth in the lease." This language does not explicitly deny Lansdale the right to terminate if the primary space is not delivered and at the very least, it allows a counterclaim for the unreasonable delay.

"An unreasonable delay is particularly a delay which is not within the contemplation of the parties to the contract, and a 'no damage' clause does not preclude recovery for damages due to a delay which is specifically unreasonable in length or duration, and particularly delay which might fairly be deemed to be equivalent to an abandonment of the contract." Fox's Foods, 870 F. Supp. at 606 (M.D.Pa 1994). The subject property was not made available to Lansdale by either date specified in the contract. It is unreasonable to expect Lansdale to pay for rental space in a warehouse that has not yet been built. Whether the delays in this case which induced the termination of the contract were reasonable is a question for the jury. Id. The plaintiff's motion for summary judgment on this count is denied.

2.     **Damages from Breach**

Freedom Properties contends that Lansdale cannot establish damages from the alleged breach. Lansdale asserts four instances where it suffered damages as a result of Freedom Properties breach: (1) those suffered as a holdover tenant at the Welsh Road property; (2) those suffered because of the loss of Milford Industries as a customer; (3) those suffered because of the loss of Jade International as a customer; and (4) those suffered because of the loss of Draeger Medical as a customer.

-8-

Freedom Properties asserts that Lansdale did not suffer compensable damages as a holdover tenant because there is no showing of lack of best efforts on their part.  They maintain that they are not responsible for Lansdale's renewal of their lease at the Welsh Road location because they were not responsible for the setback in the Target Commencement Date from June 15, 2005 to the move into the temporary space on August 22, 2005.  They contend that Lansdale suffered no damages from the two month delay because they continued to utilize their former rental space.

Lansdale claims that Freedom Properties did not use their best efforts to honor the contract.  Freedom Properties failed to deliver possession of either property by June 15, 2005 and did not deliver the primary space by March 31, 2006.  In fact, Freedom Properties did not even obtain a demolition permit for the primary space until November 16, 2005 and shortly thereafter they ceased progress on the primary space.  It was not until nine months after the date the premises was supposed to be delivered that Freedom Properties even obtained a building permit for construction.

It appears that Lansdale did suffer damages from the two month delay.  The expiration of the previous lease that Lansdale held at the Welsh Road site coincided with the June 15, 2005 date by which Freedom Properties was to turn over the property.  When even the temporary space was not delivered by that date, Lansdale was unable to move and was forced to become a holdover tenant at the Welsh Road premises.  This required them to pay an additional year's rent and utilities at the increased amount of $294,796.73.

Freedom Properties argues that Lansdale cannot attribute their loss of Jade International, Milford Industries and Draeger Medical to a breach on the part of Freedom Properties.  They claim that those customers may have left because of difficulties with the temporary space, but that Lansdale agreed to occupy the temporary space knowing the needs and demands of their clients.  Freedom Properties further asserts that they are not accountable for damages which stemmed from the loss of these customers because each customer was only bound to a thirty-day contract.  Lansdale holds that had they been occupying the primary space, these problems would not have occurred because that space had a superior sprinkler system that would not have rendered their arrangement of inventory a fire hazard.  Had the property space been delivered, Lansdale argues it would not have lost the expected long-term business relationships with Milford Industries and Draeger Medical nor its already longstanding relationship with Jade International.

There is clearly a genuine issue of material fact as to the damages incurred as a result of the delay and the effects that it had on Lansdale's business.  Further, whether a contracting party has utilized "best efforts" is a matter for the trier of fact and should not be decided on motion for summary judgment.  Fox's Foods, 870 F. Supp. at 606.  Freedom Properties motion for summary judgment on this count is denied.

### 3. **W. Paul Delp's Liability**

Freedom Properties alleges that Mr. Delp is liable for the entire amount of Lansdale's breach under the terms of his guarantee.  As it has not yet been determined

whether Lansdale incurred any liability for its actions in terminating the lease, this claim has not yet ripened.

### 4.  Best Efforts

Freedom Properties asserts that Lansdale cannot make a showing of lack of best efforts.  However, Lansdale supports its assertion that Freedom Properties did not use their best efforts to honor the contract with several facts: (1) they failed to deliver possession of either property by June 15, 2005; (2) they failed to deliver the primary space by March 31, 2006; (3) they did not obtain a demolition permit for the primary space until November 16, 2005; (4) they ceased progress on the primary space after demolition; and (5) they did not obtain a building permit for construction until nine months after the date the premises were supposed to be delivered.  There is a genuine issue of material fact regarding Freedom Properties use of best efforts.  The determination of best efforts is most appropriately made by the trier of fact.  Fox's Foods, 870 F. Supp. at 606.  The plaintiff's motion for summary judgment on this count is denied.

### 5.  Tortious Interference

Freedom Properties contends there is no proof that they tortiously interfered with its contract between Lansdale and Draeger Medical.  There are four elements to an intentional interference with contractual relations claim: (1) the existence of the contractual or prospective contractual relationship between the complainant and a third party; (2) purposeful action on the part of the defendant, specifically intended to harm the

existing relation, or to prevent a prospective relation from occurring; (3) the absence of a privilege or justification on the part of the defendant; and (4) the occasioning of actual legal damage as a result of the defendant's conduct. CGB Occupational Therapy Inc. v. RHA Health Services Inc., 357 F.3d 375, 384 (3d Cir. 2004).

Draeger Medical had a contract with Lansdale for the storage of inventory. Lansdale used the temporary space that it leased from Freedom Properties for keeping inventory. Lansdale was attempting to contract with Freedom Properties to lease additional storage space that had recently become available. During this negotiation, Lansdale showed the storage space to Draeger Medical, who was amenable to Lansdale renting the additional space from Freedom Properties. Unbeknownst to Lansdale, Freedom Properties took advantage of this introduction and began negotiating with UTi Worldwide, who would rent this space from Freedom Properties to Draeger Medical, effectively eliminating Lansdale.

Freedom Properties asserts Lansdale offered Draeger Medical warehouse space before it had reached any sort of agreement with Freedom Properties to lease that space. Therefore, there was not a contractual relationship and no "interference."

Lansdale claims that Freedom Properties "interfered" by delaying the delivery of the primary space and by inducing Draeger Medical to relocate to additional Freedom Properties rental space. Lansdale argues that Freedom Properties was aware of their vulnerable position while occupying the temporary space and used that as leverage to lure

Draeger Medical out of their contract with Lansdale and into the contract with UTi.

Lansdale cites an email between Freedom Properties employees that insinuates they should be wary about driving a hard bargain with Lansdale in order to not look like they are taking advantage of their temporary space situation. This "vulnerability" and "hard bargaining" made negotiating with Draeger Medical nearly impossible and opened the door for Freedom Properties to work a deal with Draeger Medical. It was shortly thereafter that Draeger Medical informed Lansdale that they were relocating from the temporary space and into Freedom Properties other available space in a deal secured by UTi.

There is a genuine issue as to material facts regarding plaintiff's motion for summary judgment on defendant's tortious interference counterclaim. There is a factual dispute regarding the existence of a contractual relationship between Lansdale and Draeger Medical and the type and extent of interference that Freedom Properties exhibited. This is a question for the jury. Freedom Properties' motion for summary judgment on this count is denied.

### 6.    Acceleration of Rent

The Lease provides for acceleration of rent upon default at Section 10(3)(a). The annual rent for the first two years is $500,000 and after the thirty-seventh month the rent increases three percent annually. The Tenant is responsible for additional rent, which includes taxes, a portion of the Landlord's operating costs and utilities. There is also a

late payment charge of ten percent and a default rate of interest of eighteen percent. There is a genuine issue of material fact as to liability and default in this matter; the acceleration clause is not ripe.  Plaintiff's motion for summary judgment for this count is denied.

B.  **Defendants' Motion for Partial Summary Judgment**

The defendants assert that they had the right to terminate the lease with Freedom Properties and recover damages because Freedom Properties was in breach.  Restatement (Second) of Property, Section 7.1.  The instructive treatise Friedman on Leases provides that when a lease establishes a "cut-off date," the tenant is permitted to rescind the lease and recover advanced rent and security deposits if possession is not available by the cut-off date.  4th Ed., C. 1, Sec. 4.1.  Lansdale argues that the cut-off date was March 31, 2006 and that when possession of the primary space was not made available by then, Freedom Properties breached the lease and Lansdale was entitled to rescind.  The Superior Court of Pennsylvania has referred to the failure of the lessor to tender possession of the premises by the cut-off date as "the most extreme possible type of breach of the covenant of quiet enjoyment."  2401 Pennsylvania Avenue Corp. v. Federation of Jewish Agencies of Greater Philadelphia, 466 A.2d 132, 139 (Pa. Super. 1983), aff'd 489 A.2d 733 (Pa. 1985).

Freedom Properties responds by arguing that March 31, 2006 was not a cut-off date, but that once Lansdale accepted the temporary space on August 22, 2005, they were

-14-

required under the lease to pay rent.  Freedom Properties also emphasizes that Lansdale has not made a showing as to whether, if greater effort had been shown, the primary space would have been available earlier.  Freedom Properties attempts to document its best efforts with a timeline of its activities in constructing the property.  Whether best efforts have been shown, however, is an issue for the trier of fact.  <u>Fox's Foods</u>, 870 F. Supp. at 606.

There are a number of issues of fact in this case.  The parties disagree over whether March 31, 2006 was a cut-off date after which Lansdale had the right to terminate the lease.  It is also unclear whether March 31, 2006 was the cut-off date with respect to the primary space, or whether once Lansdale received possession of the temporary space on August 22, 2005, it was then bound to wait indefinitely, as long as Freedom Properties continued to expend best efforts, for delivery of the primary space.  Factual issues also surround whether Freedom Properties did expend best efforts.  For these reasons, defendants' motion for summary judgment is denied.

IV.   **CONCLUSION**

For the reasons discussed above, I will deny plaintiff's and defendants' motions for summary judgment.  As appropriate order follows.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **FREEDOM PROPERTIES, L.P.,** | : | **CIVIL ACTION** |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | **NO. 06-5469** |
| | : | |
| **LANSDALE WAREHOUSE CO, INC.** | : | |
| **and W. PAUL DELP,** | : | |
| **Defendants** | : | |

**O R D E R**

**STENGEL, J.**

       **AND NOW**, this 30th day of October, 2008, upon consideration of

plaintiff's motion for partial summary judgment (Document #26), defendants' motion for

partial summary judgment (Document #27) and all responses thereto, it is hereby

**ORDERED** that the motions are **DENIED**.

                         BY THE COURT:


                          /s/ Lawrence F. Stengel
                         LAWRENCE F. STENGEL, J.